# UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

Danielle Khanna

Plaintiff,

V.

Equifax Information Services LLC.,

Defendant.

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Danielle Audet Khanna ("Ms. Khanna" or "Plaintiff"), and complains of the Defendant, Equifax Information Services, LLC ("Equifax"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages brought by Plaintiff against Equifax for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. Equifax is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court.

UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

4.    Venue is proper in this District because Plaintiff resides in Maynard, Massachusetts, within this judicial district, and because the acts complained of occurred and continue to occur within this district.

## PARTIES

5.    Plaintiff Danielle Audet Khanna is a natural person residing at 10 Apple Rdg Unit 2, Maynard, MA 01754.

6.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

7.    Equifax Information Services, LLC is a Georgia corporation with a primary business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

8.    Equifax is a nationwide Consumer Reporting Agency ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce, specifically the mail and internet, for the purpose of preparing or furnishing consumer reports. As a CRA, Equifax is aware of its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### A. Plaintiff's April 2026 Consumer Disclosure

9.    On or about April 1, 2026, Plaintiff requested a copy of her consumer credit disclosure from Equifax. Equifax provided a Consumer Disclosure with Confirmation Number 6091569797 dated April 1, 2026 (hereinafter "Equifax's Disclosure" or "the Disclosure").

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

10.    Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Plaintiff's request, Equifax was required to "clearly and accurately" disclose all information in Plaintiff's file at the time of the request, with the limited exception that her Social Security number could be truncated upon request.

### B. Truncated and Masked Account Numbers Across Multiple Tradelines

11.    Equifax's Disclosure shows masked or truncated account numbers across numerous tradelines. Rather than disclosing the full account numbers that data furnishers reported to Equifax, the Disclosure presents only the last four digits (e.g., "*5566," "*7925," "*1838," "*8922," "*7449," "*8155," and others).

12.    On information and belief, the data furnishers reported the full account numbers to Equifax, and those full numbers were contained within Equifax's file on Plaintiff at the time of her request. Equifax's automated consumer disclosure system omits all but the last four digits of account numbers due to a widespread systemic flaw a flaw Equifax has known about for years and has failed to correct. The failure to disclose full account numbers violates FCRA § 1681g(a)(1)'s requirement that a CRA "clearly and accurately" disclose all information in the consumer's file at the time of the request. See Advisory Opinion to Darcy, FTC (June 30, 2000) ("[I]t is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file."). See also *Washington v. Equifax*, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019). The absence of complete account identifiers greatly reduces Plaintiff's ability to verify the tradelines in her file against her own records, causing frustration and emotional distress.

13.    Plaintiff's Disclosure further contains numerous fields within individual tradelines that are

UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

blank, missing, or otherwise incomplete including but not limited to missing Scheduled Payment Amounts, missing Actual Payment Amounts, missing High Credit figures, and missing or blank payment history entries constituting an incomplete and inaccurate file disclosure under 15 U.S.C. § 1681g(a)(1).

### C. The Bank of America Charge-Off Tradeline

14. Equifax's Disclosure reflects a Bank of America credit card account (Account *7791) with a Status of "Charge Off," a Date of First Delinquency of November 17, 2022, and a Date Major Delinquency First Reported of February 19, 2026. The account shows a frozen balance of $17 that has not changed across the entire 24-month history window displayed.

15. The 24-month payment history for the Bank of America – Closed tradeline (*7791) reflects "CO" (Charge Off) entries extending from January 2024 through at least February 2026, with the Charge Off notation appearing in each and every reported month during that window. The Last Payment Date is listed as August 26, 2019 approximately six and a half years before the Disclosure date — and the account appears frozen at a static $17 balance with $17 listed as both the Amount Past Due and the Charge Off Amount across all 24 reported months.

16. The unchanging $17 balance reported month after month with no actual payment activity since August 2019 presents an internally contradictory and incomplete payment history. The static, perpetually frozen nature of this tradeline, combined with the absence of any payment context, constitutes inaccurate and misleading reporting of Plaintiff's credit history.

17. The account also bears Narrative Code 023 ("Account Listed as Public Record") on the

UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

associated Citicards CBNA Authorized User account (*6495), suggesting potential confusion or cross-tradeline data contamination that further reduces the accuracy of Plaintiff's file.

18.    Experian's and Equifax's continued reporting of the Bank of America charge-off account with a static frozen balance, without any indication of post-charge-off resolution, misleads prospective creditors reviewing Plaintiff's report into concluding that Plaintiff has an actively delinquent, unresolved obligation, which is materially inaccurate.

## D. The Capital One Account: Highest Balance Exceeding Credit Limit

19.    Equifax's Disclosure reflects a Capital One Bank USA NA flexible spending credit card account (Account *1317) with a Credit Limit of $10,000 and a High Credit of $11,524.

20.    The reported High Credit of $11,524 exceeds the stated Credit Limit of $10,000 by $1,524. At no time did Plaintiff incur overlimit charges or authorize charges in excess of the stated credit limit. Equifax's reporting of a Highest Balance exceeding the Credit Limit therefore misrepresents Plaintiff's actual account history and presents a materially misleading picture of Plaintiff's creditworthiness to prospective creditors reviewing the report. This reporting violates 15 U.S.C. § 1681e(b) because it is not accurate, and because it causes prospective creditors to view Plaintiff as having regularly exceeded her credit limit when she has not.

21.    The Narrative Code for this account (275 and 233) describes the account as a "Flexible Spending Credit Card" and states that "Amount in High Credit Column is Credit Limit." These narrative codes are internally contradictory: if the amount in the High Credit column is the credit limit (as Code 233 represents), then the $11,524 High Credit cannot simultaneously represent the credit limit when the declared Credit Limit field reads

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

$10,000. This internal contradiction further demonstrates the inaccuracy of this tradeline.

**E. The Wells Fargo Account: Anomalous Payment History and Credit Limit Discrepancy**

22. Equifax's Disclosure reflects a Wells Fargo Card Serv credit card account (Account *9177) with a current Credit Limit of $1,000 and a High Credit of $1,352.

23. The reported High Credit of $1,352 exceeds the stated Credit Limit of $1,000. At no time did Plaintiff incur overlimit charges or authorize charges in excess of the stated credit limit. Equifax's reporting of a Highest Balance exceeding the Credit Limit therefore misrepresents Plaintiff's actual account history and presents a materially misleading picture of Plaintiff's creditworthiness to prospective creditors reviewing the report.

24. The 24-month history for the Wells Fargo account (*9177) reflects an anomalous and internally inconsistent payment pattern. Specifically, beginning at least in January 2025 and continuing through November 2025, the balance column reflects $0, yet the Last Payment Date field is frozen at "02/16/2022" — a date approximately three years prior to the reporting period displayed. The Credit Limit column simultaneously switches between $1,000 (current) and $8,100 (historical) across the 24-month window without any corresponding notation, narrative code, or explanation. This unexplained credit limit discrepancy is inaccurate and materially misleading.

25. Additionally, the January 2026 reporting entry for the Wells Fargo account reflects a balance of $34, a scheduled payment of $1, a past due amount of $33 with the Last Payment Date still frozen at "02/16/2022." This entry, taken in context, presents a picture of chronic delinquency that is not supported by the overall account record, and constitutes an inaccurate, misleading tradeline under § 1681e(b).

26. Moreover, the Wells Fargo account Payment History grid shows a "30" (30 Days Past

Due) notation in January 2026, followed by payment entries in November and December 2025. This sequence is internally inconsistent and misrepresents the actual payment history of the account.

### F. Plaintiff's Pre-Suit Dispute and Equifax's Failure to Reinvestigate

27. Approximately three to four months prior to the filing of this Complaint, Plaintiff submitted a written dispute to Equifax via certified mail identifying the specific inaccuracies described herein, including but not limited to: (a) the truncated and masked account numbers across multiple tradelines; (b) the Bank of America charge-off frozen balance; (c) the Capital One Highest Balance exceeding the Credit Limit; and (d) the Wells Fargo anomalous payment history and credit limit discrepancy.

28. Upon receipt of Plaintiff's dispute, Equifax was required under 15 U.S.C. § 1681i(a)(1)(A) to conduct a reasonable reinvestigation of the disputed information within thirty (30) days and to delete or correct any information that could not be verified.

29. Equifax either failed to conduct a reasonable reinvestigation within the statutory period, or conducted a purported reinvestigation that consisted of nothing more than an automated ACDV rubber-stamp verification merely parroting back to Plaintiff the same inaccurate information originally reported by the furnishers without independently verifying the accuracy of the disputed items. See CFPB Supervisory Highlights, Consumer Reporting (March 2022) (finding that CRAs engaged in systemic reinvestigation failures by relying exclusively on automated verification without independent review).

30. As of the date of filing, Equifax has failed to correct or delete the inaccurate information identified in Plaintiff's dispute, and the above-described inaccuracies remain on Plaintiff's

UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

consumer report.

### G. Prevalence of Equifax's Account Number and Payment History Errors

31. On information and belief, Equifax's Disclosure to Plaintiff was generated using a template that extracts database information from a consumer's file and populates it into pre-programmed fields on a consumer disclosure form. This same template is used virtually every time a consumer requests their file from Equifax. As a result, consumer disclosures retrieved through Equifax's systems exhibit the same missing account number, missing account information, and payment history errors across thousands of consumers.

32. Equifax has known of the flaws in its systems for years but has done nothing to correct them, despite the large number of consumers affected. Equifax's knowing and repeated conduct warrants an award of punitive damages.

33. Equifax's failure to disclose all information in the consumer's credit file in clear and accurate consumer disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by Equifax's desire to avoid costs and increase profits.

### H. Damages

34. As a direct and proximate result of Equifax's violations of the FCRA, Plaintiff has suffered actual damages, including but not limited to: emotional distress; frustration; loss of sleep; and damage to creditworthiness and reputation. Specifically, as a result of the inaccurate information Equifax has disseminated in Plaintiff's consumer reports, Plaintiff has been unable to qualify for credit on favorable terms, has suffered damage to her reputation with prospective creditors, and has experienced ongoing emotional distress and loss of sleep. The lack of accurate account information and the presence of inaccurate tradeline data caused Plaintiff great frustration and emotional distress when trying to

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

understand her credit report and verify it against her own records.

35. The dissemination of Plaintiff's inaccurate credit file to third parties who reviewed the file as evidenced by the hard and soft inquiries reflected in the Disclosure, including but not limited to hard inquiries by Informative Research and Birchwood Credit Services on March 31, 2026 establishes concrete injury-in-fact under TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021), because the inaccurate information was actually communicated to third parties and not merely maintained in an internal database. See also Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982) (violation of statutory right to accurate information constitutes cognizable injury in and of itself).

## COUNT I

## WILLFUL VIOLATION OF THE FCRA

### 15 U.S.C. §§ 1681e(b), 1681i, and 1681g(a)(1)

36. Plaintiff adopts and incorporates all preceding paragraphs as if fully stated herein.

37. Equifax willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of the consumer report, specifically with respect to: (a) the Bank of America charge-off tradeline with a frozen balance and internally contradictory payment history; (b) the Capital One tradeline reporting a Highest Balance in excess of the Credit Limit; (c) the Wells Fargo tradeline reporting an anomalous, internally inconsistent payment history and unexplained credit limit variation; and (d) other tradelines reflecting internally contradictory, incomplete, or inaccurate data as described herein.

38. Equifax willfully violated 15 U.S.C. § 1681g(a)(1) by failing to "clearly and accurately"

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

disclose to Plaintiff all information in her file at the time of her request, specifically by: (a) truncating and masking account numbers across multiple tradelines, contrary to the FCRA's clear and accurate disclosure requirement and the FTC Advisory Opinion to Darcy (June 30, 2000); and (b) failing to include complete payment histories, scheduled payment amounts, high credit figures, and other data contained in Equifax's file on Plaintiff.

39. Equifax willfully violated 15 U.S.C. § 1681i by: (a) failing to conduct a reasonable reinvestigation of the disputed inaccuracies within thirty (30) days of receiving Plaintiff's written dispute; and/or (b) conducting a reinvestigation that consisted of nothing more than an automated ACDV rubber-stamp verification that merely confirmed the furnishers' original data without independent review, in violation of its duty under § 1681i(a)(4) to review all relevant information submitted by Plaintiff and to independently verify the accuracy of disputed items.

40. Equifax's conduct was willful within the meaning of 15 U.S.C. § 1681n and *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), because Equifax's actions reflect a policy and practice of systematically truncating account numbers, conducting rubber-stamp reinvestigations, and reporting inaccurate tradeline data in reckless disregard of Plaintiff's rights under the FCRA conduct that Equifax knew or should have known violated the statute, and that Equifax failed to correct despite repeated notice of these systemic flaws.

41. Equifax is therefore liable to Plaintiff pursuant to 15 U.S.C. § 1681n for the greater of her actual damages or statutory damages of not less than $100 and not more than $1,000 per violation, plus punitive damages in an amount to be determined by the trier of fact, plus costs and reasonable attorney's fees.

UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

## COUNT II

## NEGLIGENT VIOLATION OF THE FCRA

### 15 U.S.C. §§ 1681e(b), 1681i, and 1681g(a)(1)

42.    Plaintiff adopts and incorporates all preceding paragraphs as if fully stated herein.

43.    In the alternative, Equifax negligently violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff when preparing her consumer report, as described herein.

44.    In the alternative, Equifax negligently violated 15 U.S.C. § 1681g(a)(1) by failing to clearly and accurately disclose all information in Plaintiff's file at the time of her request, including by truncating account numbers and omitting complete payment history and account detail data.

45.    In the alternative, Equifax negligently violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of the specific inaccuracies Plaintiff identified in her written dispute, and/or by failing to correct or delete information that could not be verified upon reinvestigation.

46.    Equifax is therefore liable to Plaintiff pursuant to 15 U.S.C. § 1681o for her actual damages, plus costs and reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Danielle Audet Khanna respectfully requests that this Honorable Court enter judgment against Equifax Information Services, LLC and award Plaintiff the following relief:

a.  Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) of not less than $100 and not more than

UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

$1,000 per violation;

b.  Actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

c.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

d.  Costs of suit pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

e.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

_Danielle    Khanna_

Danielle Khanna

10 Apple Rdg Unit 2

Maynard, MA 01754

Pro Se Plaintiff

Dated: April 03, 2026

## EXHIBIT

Exhibit A:    Equifax Consumer Disclosure dated April 1, 2026 (Confirmation No. 6091569797)

Exhibit B:    FTC Advisory Letter (Advisory Opinion to Darcy, June 30, 2000)

Exhibit C:    Notes or screenshots showing truncated account numbers, missing payment history, and incomplete tradeline data